UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


WILLIAM D. FAIRCHILD,

       Petitioner,

-vs-                                          Case No.  6:10-cv-1006-Orl-36DAB

SECRETARY, DEPARTMENT
 OF CORRECTIONS, et al.,

       Respondents.
_____/

## ORDER

       This case is before the Court on the second amended petition for habeas corpus relief filed by Petitioner pursuant to 28 U.S.C. section 2254 (Doc. No. 37) and the accompanying memorandum of law (Doc. No. 38).  Respondents filed a response (Doc. No. 41) to the amended petition, and Petitioner filed a reply to the response (Doc. No. 53).

## I.    *Procedural History*

       Petitioner was charged by amended information with one count of kidnapping with intent to inflict bodily harm or terrorize (count one), one count of robbery with a firearm (count two), one count of armed burglary of a dwelling with a firearm (count three), one count of falsely impersonating an officer during the commission of a felony (count four), one count of burglary of a dwelling with an assault or a battery (count five), one count of possession of a firearm by a convicted felon (count six), and three counts of aggravated assault with a firearm (counts seven through nine).  At trial, count six was orally amended

to be count nine, and counts seven, eight, and nine were then renumbered as counts six, seven, and eight.  The jury found as follows: 1) guilty of the lesser included offense of false imprisonment as to count one; 2) guilty of the lesser included offense of petit theft as to count two; 3) guilty as to count three; 4) guilty as to count four; 5) not guilty as to count five; and 6) guilty as to counts six, seven, and eight.  Petitioner entered a plea of nolo contendere as to count nine (possession of a firearm by a convicted felon).  The trial court adjudicated Petitioner guilty of the crimes and sentenced him to imprisonment for a total term of twenty years.  Petitioner filed a direct appeal, and the state appellate court affirmed *per curiam* on February 14, 2006.  Mandate was issued on March 3, 2006, and Petitioner's motion for rehearing was denied on March 9, 2006.

On September 29, 2006, Petitioner filed a petition for writ of habeas corpus with the state appellate court,[1] which was denied on January 19, 2007.  Petitioner's motion for  a rehearing was denied on March 2, 2007.

On August 27, 2007, Petitioner filed a second petition for writ of habeas corpus with the state appellate court, which was denied on October 16, 2007.  Petitioner's motion for a rehearing was denied on November 30, 2007.

On January 9, 2008, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was later

---

[1]References to the filing date of pleadings by Petitioner shall be the filing date under the mailbox rule.  *See Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999) (under the "mailbox rule," a pro se prisoner's motion to vacate, set aside, or correct sentence was filed on the date that he signed, executed, and delivered his petition to prison authorities for mailing).

amended.  On September 18, 2009, the trial court entered an order denying the Rule 3.850

motion and amendments thereto.  The state appellate court affirmed the denial *per curiam*

on April 6, 2010.  Mandate was issued on June 3, 2010.

Petitioner has raised thirty-six claims.  Those claims will be described and addressed

below.

## II.    *Discussion of Petitioner's Habeas Petition*

## A.    *Petitioner's Habeas Petition Was Timely Filed*

Pursuant to 28 U.S.C. § 2244,

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> > (A)    the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
> >
> > (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of

3

limitation under this subsection.

In the present case, Petitioner's conviction became final under Florida law on March 3, 2006, when the state appellate court issued mandate with regard to his direct appeal. *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("Under Florida law, a judgment against a criminal defendant becomes final upon issuance of the mandate on direct appeal."). However, under section 2244(d)(1)(A), the Court must include the time that Petitioner could have sought review with the United States Supreme Court. *Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002). Thus, Petitioner's conviction, for purposes of § 2244(d)(1)(A), became final, at the latest, on June 7, 2006, which was ninety days after entry of the appellate court's order denying Petitioner's motion for a rehearing. *See* Sup. Ct. R. 13(3).[2] Petitioner then had until June 7, 2007, absent any tolling, to file a federal habeas petition regarding his convictions.

Pursuant to section 2244(d)(2), the one-year period is "tolled" for the time during which a properly filed state postconviction or collateral proceeding is pending. When Petitioner filed his first state petition for writ of habeas corpus with the state appellate

---

[2]United States Supreme Court Rule 13(3) provides as follows:

The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice). But if a petition for rehearing is timely filed in the lower court by any party, the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of the petition for rehearing or, if the petition for rehearing is granted, the subsequent entry of judgment.

court on September 29, 2006, 115 days of the one-year period had run.  After those

proceedings concluded on March 2, 2007, the one-year period then ran for 179 days, which

was when Petitioner filed his second petition for writ of habeas corpus with the state

appellate court on August 27, 2007.  Those proceedings concluded on November 30, 2007.

The one-year period then ran for 41 days, which was when Petitioner filed his Rule

3.850 motion with the state trial court on January 9, 2008.  Those proceedings concluded

on June 3, 2010, and the one-year period expired on July 5, 2010.  Thus, Petitioner's federal

habeas petition filed on June 24, 2010, was timely.

**B.**      ***Factual Background***

The State presented evidence at trial, through the victim (Tyson Cummings) and the

co-defendants (Linda Galceran and Troy McPhillips), that Petitioner impersonated a law

enforcement officer, kidnapped Mr. Cummings, committed a home invasion burglary at

the home of Gloria Brown (the victim's mother), and then drove around with Mr.

Cummings in an attempt to get members of his family to bring drugs and money to various

locations.

**C.**      ***Discussion of Petitioner's Claims***

Petitioner has raised five grounds for relief in his amended habeas petition.  Under

each ground, he has raised numerous sub-claims, which total thirty-six claims.  The

discussion of the claims will be grouped with regard to their similarity.

1.      *Claims One and Seven*

Petitioner alleges in claim one that the trial judge failed to reduce the oral order

denying Petitioner's motion to suppress to writing and to file a written order and in claim seven that the State Attorney's Office failed to afford Petitioner a first appearance hearing.

Petitioner fails to assert a violation of a federal constitutional issue under either claim one or claim seven.  "A federal habeas court asks only whether a constitutional violation infected the trial."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *See Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *Llamas-Almaguer v. Wainwright*, 666 F.2d 191 (5th Cir. 1982).   Thus, claims one and seven are denied.[3]

     2.    *Claims Three, Four, and Five*

Petitioner argues as follows:  a) there was prosecutorial misconduct for failing to disclose the results of a kidnapping investigation (claim three); b) there was prosecutorial misconduct for failing to disclose the plea agreement with co-defendant Ms. Galceran, in which she agreed to testify against Petitioner in exchange for a lenient sentence (claim four); and c) there was prosecutorial misconduct for failing to disclose additional statements that co-defendant Mr. McPhillips made to a detective (claim five).  These claims were raised in Petitioner's Rule 3.850 motion and were denied.

The Eleventh Circuit Court of Appeals has determined that in order to establish a

---

[3]In addition, the trial court found that claim one was procedurally barred because it was not raised on direct appeal.  The denial on procedural bar grounds was a correct application of Florida law, and claim one is also denied in this Court as procedurally barred.

violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the petitioner must demonstrate the following:

> (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989).  For purposes of *Brady*, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Stewart,* 820 F.2d 370, 374 (11th Cir. 1987) (quotation omitted).  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).  Further, "*Brady* does not require the government to turn over information which, with any reasonable diligence, the defendant can obtain himself." *Jarrell v. Balkcom*, 735 F.2d 1242, 1258 (11th Cir. 1984) (quotation omitted).

As discussed by the trial court, claim three was based on a typographical or clerical error with regard to the Orange County Sheriff's Department ("OCSD") case number dealing with the kidnapping in this case.  In particular, the Orlando Police Department's charging affidavit referenced an OCSD case number that was erroneous based on a clerical error.  Nevertheless, there was only one kidnapping, and it was charged along with the other offenses committed by Petitioner as part of one continuing criminal episode.  All

relevant information about the kidnapping charge was provided to the defense in discovery, and, even if certain information was withheld, there is no likelihood that this information would have affected the outcome of this case.

As to claim four, there is no reasonable probability that the outcome of this case would have been different if this information had been available to the defense.  Even if Ms. Galceran had been impeached with this information, her testimony was cumulative to that of co-defendant Mr. McPhillips.  Moreover, there was strong identification evidence against Petitioner.

In claim five, Petitioner argues that the prosecution failed to disclose additional statements made by Mr. McPhillips to a detective.  However, Petitioner has admitted that he received the transcript of the taped statement that Mr. McPhillips gave to the detective after all three Defendants were arrested.  In that statement, Mr. McPhillips confessed to being part of the kidnapping and home invasion.  Petitioner has failed to demonstrate that the prosecution withheld any evidence relating to statements given by Mr. McPhillips.

Under the circumstances, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on these claims.

3.      *Claims Two, Six, Fourteen, Fifteen, and Thirty-One through Thirty-Four*

Petitioner argues as follows:  a) the trial court violated Petitioner's right to effective assistance of counsel because it was aware of a conflict and corrected that conflict, then failed to conduct a hearing to inquire into another potential conflict arising out of the same

incident (claim two);  b) there was prosecutorial misconduct for failing to disclose the names of five police officers who were dispatched and involved in the home invasion robbery case (claim six); c) there was selective prosecution (claim fourteen); d) the prosecutor made false statements during Petitioner's sentencing hearing (claim fifteen); e) ineffective assistance of trial counsel for failing to file a motion to dismiss the amended information (claim thirty-one); f) ineffective assistance of trial counsel for failing to request that the trial judge enter a judgment notwithstanding the verdict after the jury returned inconsistent verdicts on five counts of the information (claim thirty-two); g) ineffective assistance of trial counsel for failing to investigate information provided by a witness for the State during a pre-trial deposition and to have this information available for use during trial preparations and during trial (claim thirty-three); and h) ineffective assistance of trial counsel for failing to investigate and obtain a copy of the criminal history of a witness for the State and  to have this information available for impeachment during the trial (claim thirty-four).

These claims were raised in Petitioner's Rule 3.850 proceedings, and the trial court found that they were procedurally barred because they were untimely filed.  This was a correct application of Florida law.  *See Foley v. State*, 979 So. 2d 1181, 1182 (Fla. 3d DCA 2008) ("To the extent that Foley's latest submission alleges ineffective assistance of trial counsel, we conclude that the claim is untimely as it was filed beyond the two-year time limit set forth in rule 3.850(b). It is also procedurally barred as Foley could have raised this claim in his prior motions for postconviction relief."). The federal court must dismiss those

claims or portions of claims that either (1) have been explicitly ruled procedurally barred by the highest state court considering the claims,[4] or (2) are not exhausted but would clearly be barred if returned to state court.[5] Thus, "[f]ederal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law.  In addition, federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally defaulted . . . ." *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).[6]

These claims are procedurally barred because the trial court so determined in its order denying Petitioner's motion for postconviction relief, and the state appellate court affirmed *per curiam*.[7]  The denial on procedural bar grounds was a correct application of Florida law.

There are two exceptions to the procedural default bar.  The first is the "cause and

---

[4]*Harris v. Reed*, 489 U.S. 255, 261 (1989).

[5]*See, e.g., Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

[6]Also, if the petitioner attempts to raise the claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

[7]A *per curiam* affirmance of a trial court's finding of a procedural default is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by the federal courts.  *See Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990).

prejudice" exception;[8] the second, which is a narrow one, is the "actually innocent" exception, also known as the "fundamental miscarriage of justice" exception, used in extraordinary circumstances. *See Johnson v. Singletary*, 938 F.2d 1166, 1174-75 (11th Cir. 1991).

In the present case, Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, these claims are denied.[9]

---

[8]*See Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("when a procedural default bars state litigation of a court claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice."); *see also Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992) (the petitioner must demonstrate cause and prejudice for failing to raise instances of ineffective assistance of counsel with the state court).

[9]As to the ineffective assistance of counsel claims, the Court is aware that the Supreme Court of the United States recently held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim..." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to *Strickland. Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012). In such instances, the prisoner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

The Court recognizes that Petitioner may have shown cause for his failure to raise these ineffective assistance of counsel claims in his initial-collateral proceeding; however, Petitioner has not demonstrated prejudice. The Court has reviewed these claims and finds that they are without merit and, thus, are not substantial.

4.     *Claims Eight through Thirteen*

Petitioner argues that there was prosecutorial misconduct based on the following: a) for failing to correct the false testimony given by Officer Pinder about the identification procedure used to show suspects to a witness for identification (claim eight); b) for knowingly allowing a state witness to testify falsely and for failing to correct the false testimony of a state witness about her agreement to testify (claim nine); c) for knowingly allowing a state witness to testify falsely and for failing to correct the false testimony given by three of the State's witnesses concerning telephone calls (claim ten); d) for knowingly allowing a state witness to testify falsely and for failing to correct numerous false testimonies given by Mr. Cummings (claim eleven); e) for knowingly allowing a state witness to testify falsely and for failing to correct the false testimony of a state witness/codefendant concerning the kidnapping (claim twelve); and f) for knowingly allowing a state witness to testify falsely and for failing to correct the false testimony of a state witness about his signed plea agreement to testify against Petitioner (claim thirteen). There claims were raised in Petitioner's Rule 3.850 motion and were denied.

In *Giglio v. United States*, 405 U.S. 150, 153 (1972), the Supreme Court held that the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice."  (Quotation omitted).  To prevail on a *Giglio* claim,  it must be shown that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony," *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995), and that the falsehood was material.  *United*

*States v. Agurs*, 427 U.S. 97, 103-04 (1976). A falsehood is deemed to be material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Alzate*, 47 F.3d at 1110 (quotation omitted) (citations omitted).

a.    *Claim Eight*

Petitioner states that the State knowingly failed to correct the false testimony given by Officer Pinder about the identification procedure used to show suspects to a witness for identification. Although there were discrepancies in the testimonies of Officer Pinder and Gloria Brown regarding the circumstances of the show-up identification, there is no indication whatsoever that Officer Pinder's testimony was false.

The Court notes that the trial took place seventeen months after the crimes were committed, and neither Ms. Brown nor Officer Pinder remembered the exact details of the show-up identification, as they both admitted their uncertainty at trial. Their uncertainty did not equate to the State knowingly presenting false testimony. Petitioner has failed to present any credible evidence to show that any of Officer Pinder's testimony was false and that the State knowingly presented false testimony. In addition, there has been no showing that this testimony was material. Consequently, this claim is denied.

b.    *Claim Nine*

Petitioner states that the State knowingly allowed a state witness to testify falsely and failed to correct the false testimony of a state witness about an agreement to testify. This claim relates to Ms. Galceran and is a restatement of claim four. For the reasons set forth in claim four above, this claim is denied. Ms. Galceran's testimony was cumulative

of Mr. McPhillips, and there has been no showing that this testimony was material. Consequently, this claim is denied.

      *c.*    *Claim Ten*

Petitioner states that the State knowingly allowed a state witness to testify falsely and failed to correct the false testimony given by three of the State's witnesses concerning telephone calls.  According to Petitioner, three witnesses for the State falsely testified that they answered the telephone and handed the telephone to certain law enforcement officers, who then spoke with the kidnapped victim.  However, Petitioner maintains that, at the suppression hearing, the law enforcement officers testified that they were never handed a telephone and that they never spoke with the kidnapped victim.

Although there may have been inconsistencies in the testimony regarding the telephone calls, those inconsistencies did not relate to the elements of the crime. Inconsistencies in the testimony were matters for impeachment.  The significant information about the telephone calls was that Petitioner and the victim made telephone calls directing the victim's family to bring money and drugs to various locations. Petitioner has failed to demonstrate that any discrepancies in the testimony was for a reason other than the passage of times and the fading of memories.

Moreover, Petitioner has failed to present any credible evidence to show that the State knowingly presented false testimony.  In addition, in light of the overwhelming evidence presented by the State, there has been no showing that this testimony was material.  Consequently, this claim is denied.

14

d.    *Claim Eleven*

Petitioner maintains that the State knowingly allowed a state witness to testify falsely and failed to correct numerous false testimonies given by state witness Mr. Cummings, the victim.

The inconsistencies in the testimony of Mr. Cummings did not relate to the elements of the crime, and most of the inconsistencies were cleared up during cross-examination and re-direct examination.   Moreover, the inconsistencies were matters relating to Mr. Cummings' memory and credibility.

Petitioner has failed to present any credible evidence to show that the State knowingly presented false testimony. In addition, in light of the overwhelming evidence presented by the State, there has been no showing that this testimony was material. Consequently, this claim is denied.

e.    *Claim Twelve*

Petitioner states that the State knowingly allowed a state witness to testify falsely and failed to correct the false testimony of state witness/codefendant concerning the kidnapping.   This claim relates to inconsistent statements made by Mr. McPhillips during his proffer testimony and his testimony at trial.

The difference in Mr. Phillips' statements was clearly an attempt by him to minimize his participation in the crimes.  Such inconsistencies are the subject of impeachment, go to the credibility of the witness, and do not establish that the State presented false testimony. Finally, in light of the overwhelming evidence presented by the State, there has been no

showing that this testimony was material.  Consequently, this claim is denied.

> f.    *Claim Thirteen*

Petitioner states that the State knowingly allowed a state witness to testify falsely and failed to correct the false testimony of a state witness about his signed plea agreement to testify against Petitioner.   This claim relates to the plea agreement of Mr. McPhillips.

Under his plea agreement, Mr. McPhillips was required to testify against Petitioner. Mr. McPhillips was sworn to tell the truth prior to testifying.  There is nothing in the record or in Petitioner's bald allegations to indicate that Mr. McPhillips testified untruthfully. Petitioner has not established that the State presented false testimony, and,  in light of the overwhelming evidence presented by the State, there has been no showing that this testimony was material.  Consequently, this claim is denied.

As to claims eight throught thirteen, the Court also concludes that Petitioner has not shown that the state court's rejection of these claims was contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

> 5.    *Claims Sixteen through Thirty*

These claims involve ineffective assistance of trial counsel.  The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient

performance prejudiced the defense.[10]  *Id.* at 687-88.  Each of these claims will be described

and discussed below.

       *a.*     *Claims Sixteen, Seventeen, and Eighteen*

Petitioner claims that trial counsel was ineffective as a result of the following:

failing to investigate and obtain news videos and raw footage from three television

stations to be used as impeachment evidence during his trial (claim sixteen); failing to use

diligence to obtain copies of the results of the OCSD investigation of a prior kidnapping

with which Petitioner was charged (claim seventeen); and failing to obtain copies of the

results of the OCSD investigation of Petitioner for possessing and illegally using sheriff's

office equipment (claim eighteen).

Petitioner contends that the television videos would have shown that he was never

part of a show-up identification, which would have supported a motion to suppress his

identification.  However, Petitioner's allegations with regard to this matter are speculative

and conclusory.   Aside from his own allegations, he has provided no evidence

demonstrating that the television videos would have provided information useful to his

trial.  Moreover, Petitioner has not established the prejudice element required to sustain

an ineffective assistance of counsel claim.

As to the OCSD investigation results, these matters were provided to Petitioner's

---

[10]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

counsel during discovery. In addition, Petitioner has not demonstrated that this information was favorable or material to the defense or that it would have constituted exculpatory or impeachment evidence. Thus, Petitioner has not demonstrated either deficient performance or prejudice with regard to these claims. As a result, claims sixteen, seventeen, and eighteen are denied.

b.      *Claim Nineteen*

Petitioner states that trial counsel was ineffective for failing to file a pretrial motion to suppress when requested to do so. This claim is without merit because Petitioner's counsel filed a motion to suppress prior to the start of the trial, and a hearing was held on the motion. After the hearing, the motion was denied based on the trial court's finding that there was probable cause to stop the van which Petitioner was driving. Thus, Petitioner has not demonstrated either deficient performance or prejudice with regard to this claim, and it is denied.

c.      *Claim Twenty*

Petitioner argues that trial counsel was ineffective for failing to impeach Mr. McPhillips' trial testimony with his statement to law enforcement and his proffered testimony.

At trial, Petitioner's counsel conducted a thorough cross-examination of Mr. McPhillips. Although Petitioner's counsel did not address any inconsistencies between Mr. MrPhillips' trial testimony and his statement to law enforcement and his proffered testimony, those inconsistencies were insignificant. Further, in light of the testimony of Ms.

18

Galceran and the testimony of the victim concerning Petitioner's commission of the crimes, Petitioner has failed to show prejudice.  Petitioner was positively identified as the person who committed the home invasion burglary and as being the individual dressed as a deputy sheriff.  Petitioner was driving the van which was stopped and in which another victim was held against his will.  Any failure on the part of trial counsel by not questioning McPhillips about his statements did not render the result of Petitioner's trial fundamentally unfair or unreliable.  Petitioner has failed to establish both deficient performance and prejudice, and this claim is without merit.

     *d.*    *Claim Twenty-One*

Petitioner argues that trial counsel was ineffective during the motion to suppress hearing for failing to object to the prosecutor's elicitation of hearsay testimony from a state witness which he claims was untrue.  This claim is without merit because hearsay testimony is generally admissible in a pre-trial suppression hearing.  *See State v. Littles*, 68 So. 3d 976, 978 (Fla. 5th DCA 2011).[11]  In addition, given the overwhelming evidence, the failure of trial counsel to make a hearsay objection during the motion to suppress hearing did not render the result of the hearing fundamentally unfair or unreliable.  Thus, Petitioner has failed to establish both deficient performance and prejudice, and this claim is without merit.

---

[11]The Florida Supreme Court, however, clarified in *Parker v. State*, 2011 WL 5984446 (Fla. 2011) that hearsay evidence is not always admissible at suppression hearings.

19

e.      *Claims Twenty-Two and Twenty-Three*

Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor's introduction of irrelevant testimony from the state's witness that was prejudicial to Petitioner during the suppression hearing (twenty-two) and for failing to object to the prosecutor's use of improper testimony elicited from the state's witness to support the State's argument to deny the motion to suppress (twenty-three).  In particular, he complains that the prosecutor repeatedly asked law enforcement about events that occurred after the van, which Petitioner was driving and in which one of the victims was found handcuffed, was stopped and about information they possessed prior to the stop and arrest of Petitioner.

Clearly, this testimony was relevant to the stop and arrest of Petitioner.  For example, the testimony about events that happened after the van was stopped was relevant to Petitioner's subsequent arrest.  Petitioner has failed to show that counsel acted deficiently or that he sustained prejudice, and these claims are without merit.

f.      *Claim Twenty-Four*

Petitioner states that trial counsel was ineffective for failing to reveal to Petitioner that Mr. McPhillips' plea agreement provided that Mr. McPhillips would receive immunity for his trial testimony.

Petitioner has failed to demonstrate that his counsel was obligated to inform him that Mr. McPhillips would receive immunity for his trial testimony, and the Court concludes that counsel was not deficient in failing to do so.  In addition, there has been no

showing of prejudice with regard to this matter, and this claim is without merit.

    *g.*    *Claim Twenty-Five*

Petitioner states that trial counsel was ineffective for failing to impeach Mr. McPhillips about his plea agreement. He contends that Mr. McPhillips did not testify truthfully at trial with regard to the terms of the plea agreement in that his testimony did not include the fact that he would receive "use testimony."[12] Mr. McPhillips testified both on direct and cross-examination about the plea agreement and that he received a 67.8 month sentence and was required to testify truthfully as part of the plea agreement. Thus, the jury was aware of the reason Mr. McPhillips was testifying. Under the circumstances, trial counsel's performance was not deficient, and there has been no showing of prejudice. As a result, this claim is without merit.

    *h.*    *Claim Twenty-Six*

Petitioner states that trial counsel was ineffective for allowing Mr. McPhillips to commit perjury. He argues that Mr. McPhillips committed perjury when he testified that the plea agreement required him to testify truthfully but did not include the fact that he would receive use immunity.

Petitioner has failed to present any evidence that Mr. McPhillips did not testify truthfully or that he committed perjury. Mr. McPhillips described the provisions of his plea agreement, and Petitioner has not shown that any portion of this testimony was false.

---

[12]"Use immunity prevents authorities from using the testimony against the witness in any criminal prosecution of the witness." *McKay v. Great Am. Ins. Co.*, 876 So. 2d 666, 670 (Fla. 4th DCA 2004).

Under the circumstances, trial counsel's performance was not deficient, and there has been no showing of prejudice.  As a result, this claim is without merit.

      *i.*    *Claim Twenty-Seven*

Petitioner states that trial counsel was ineffective for failing to object to the prosecutor's misleading statements during closing arguments that allegedly bolstered Mr. McPhillips' testimony.  In particular, Petitioner points to the prosecutor's statement that Mr. McPhillips had a plea agreement whereby "he had to testify truthfully."  *See* Appendix D at 449.  According to Petitioner, this was false because Mr. McPhillips' agreement was that he was to be given use immunity.

The Court finds that the prosecutor's comments were not improper.  Mr. McPhillips did agree to testify truthfully, and there was no basis for counsel to raise an objection.  Under the circumstances, trial counsel's performance was not deficient, and there has been no showing of prejudice.  As a result, this claim is without merit.

      *j.*    *Claim Twenty-Eight*

Petitioner states that trial counsel was ineffective for failing to cross-examine Gloria Brown and Emmanuel Glen about whether they saw Mr. McPhillips in the house prior to seeing Petitioner.  The record reflects that Petitioner's counsel adequately cross-examined these witnesses.  Further, the evidence and testimony clearly established that Petitioner was inside the house with a gun.  Under the circumstances, trial counsel's performance was not deficient, and there has been no showing of prejudice.  As a result, this claim is without merit.

k.    *Claim Twenty-Nine*

Petitioner states that trial counsel was ineffective for failing to object to the prosecutor's use of an allegedly impressionably suggestive single photograph of Petitioner for witness identification during the trial.  He argues that two of the State's witnesses could not identify Petitioner at trial, so the prosecutor showed them photographs that included only Petitioner, without the co-defendants.

Petitioner's appearance had changed from the time the crimes were committed to the time of the trial.  Therefore, it was appropriate for the prosecutor to show these witnesses pictures of Petitioner taken on the day of the crimes.  Additionally, other witnesses and the co-defendants identified Petitioner at trial.  Under the circumstances, trial counsel's performance was not deficient, and there has been no showing of prejudice. As a result, this claim is without merit.

l.    *Claim Thirty*

Petitioner states that trial counsel was ineffective for failing to request a *Richardson*[13] hearing when discovery violations surfaced during the trial.  One of the State's exhibits was a composite exhibit of six photographs taken of Tyson Cummings.  Two of those photographs showed an Orlando Police Department ("OPD") uniform hanging in the back of the van.  Although the photographs had been provided in discovery, the OPD uniform was not included in the crime scene investigator's list of items collected from inside the van.  He also argues that an OCSD's shirt, a bulletproof vest, and a ballistic trauma plate

_____

[13]*Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

were not on the crime scene investigator's list.

Petitioner has not shown prejudice with regard to this matter. Before these photographs were introduced into evidence, the prosecutor cut off those portions of the photographs that showed the uniforms. *See* App. C at 177-78. Further, it would not have helped Petitioner's defense if the jury had learned that Petitioner was in possession of an OPD uniform and the other items mentioned. In fact, it would have been detrimental to his case. As such, this claim is denied.

The Court also determines that, with regard to claims seventeen through thirty-one, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on these claims.

6.      *Claim Thirty-Five*

Petitioner states that all of his claims of prosecutorial misconduct and ineffective assistance of counsel when taken as a whole establish cumulative error.

Because the Court has already found that Petitioner has not demonstrated any violations of his constitutional rights based on his claims of prosecutorial misconduct and ineffective assistance of counsel, Petitioner's claim of cumulative error is denied. *See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("[w]ithout harmful errors, there can be no cumulative effect compelling reversal.").

7.      *Claim Thirty-Six*

Petitioner raises a number of claims of ineffective assistance of appellate counsel and

one claim that the State filed an "erroneous" answer brief.  He states that the initial brief was missing a page and that appellate counsel failed to accurately detail the relevant facts and to include pertinent "transcript page cites" from the suppression hearing.  He also states that appellate counsel failed to file a reply brief and to file a motion to dismiss the appeal without prejudice after learning that there was no written order denying the motion to suppress.  Petitioner also mentions that the State's answer brief contained false statements and that the appellate briefs submitted by both parties were "defective."

It is well-established that a defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).  The standard for analyzing ineffective assistance claims is the same for trial and appellate counsel.  *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987).  The Eleventh Circuit has applied the Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims.  *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).

This claim is without merit.  There was no missing page in the initial brief; rather, page 2 was misnumbered.  Moreover, appellate counsel's recitation of the facts was detailed, included a discussion surrounding the motion to suppress, and contained citations to the record on appeal.

Moreover, there is no requirement that appellate counsel file a reply brief, and there has been no showing that appellate counsel acted deficiently in failing to do so or that Petitioner sustained prejudice.

As to the lack of a written order denying the motion to suppress, the trial judge

orally denied the motion to suppress, and there is no indication from the record that the state appellate court failed to address the merits of Petitioner's claim. Petitioner has also failed to demonstrate that there was any basis for appellate counsel to file a motion to dismiss the appeal without prejudice based on the lack of a written order.

Further, Petitioner has failed to show that the State's answer brief contained false statements or that either appellate brief was in any manner defective.

The Court notes that Petitioner's appellate counsel submitted an initial brief which was comprehensive, thorough, and well-argued. Certainly, the record clearly evinces the thoroughness and reasonableness of appellate counsel's work. *Cf. Thomas v. Scully*, 854 F. Supp. 944 (E.D.N.Y. 1994) (the appellate brief submitted by counsel clearly showed the thoroughness of counsel's work). As discussed by the district court in *Richburg v. Hood*, 794 F. Supp. 75 (E.D.N.Y. 1992),

> [T]he court simply notes that the decision of appellate counsel to choose among plausible options of appellate issues is preeminently a strategic choice and is "virtually unchallengeable." The petitioner has not even undertaken to demonstrate that the decision of his attorney not to raise this issue constituted an "unprofessional error" or that such error prejudiced his appeal.

*Id*. at 78. The Court concludes that appellate counsel's performance was not deficient and that Petitioner has not demonstrated prejudice. In addition, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim. Hence, this claim must fail.

The Court has reviewed all of Petitioner's claims and found that they are all without merit.  As such, any of Petitioner's allegations that are not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Second Amended Petition for Writ of Habeas Corpus (Doc. No. 37) filed by William D. Fairchild is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment accordingly and  close this case.

3.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.[14]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

---

[14]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts*,

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  A motion to reconsider a denial does not extend the time to appeal.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this 21st day of August,

2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-2 8/21
Counsel of Record
William D. Fairchild